Good morning, your honors. My name is Thomas E. Frank. I'm here to represent the appellate, Greg Yates. It's a pleasure to meet you. I'd like to reserve five minutes. First of all, I have a question at the outset, and that is whether, in part, this case is moot with respect to the injunction. Has the entrance to the store now been completed? It appears from the record that it was under way at the time the district court had it. Well, as of yesterday, I was there, and the power door had been installed, but it's a noncompliant power door. Well. So the answer is yes, the power door has not been completed. So to answer the question with regard to the specifics of what you saw yesterday, let's assume you're in front of a trial judge, and the other side says, you're right, your honor, we have to remediate, and we're in the process of doing it. Should a judge, does a judge abuse his discretion under those circumstances in not granting an injunction? Or should the judges retain jurisdiction and say, come back in 60 days or 90 days and prove to me that you've done it? No, it's in a global situation. In this specific case, the complaint was filed on 4-21-11. They come into trial 40 months later and say, well, you know, we've got a proposal here. We're going to install it after this trial. Well, that's not really, once it reaches us, we are not supposed to decide issues if they're no longer live issues, and it's just part of our background music. And I understand your position that if the change was readily achievable, there should have been an injunction at the time. But that was then, and this is now. So here we are today in the question of whether it makes sense or doesn't make sense to say, yes, you were entitled to a power-operated door when there's already a power-operated door. Now, you may have a different issue with that, but that's not the situation that was in existence at the time of the district court proceedings. Well, at the time of the district court proceedings, the court erred by taking the word of the defendant that they were going to install it. No, I understand that, but, you know. But as we are here today, it's an uncomplimented board, and the injuncture from you has not been satisfied. So let me look at it differently. The judge did not create injunctive relief. Do I assume that we can live forever? We need to remand this case to the trial judge. Should we say to the trial judge, on remand, you can determine whether it's been communicated and if not, you should issue an injunction? No, we should send it back to the trial court and say, you have to issue an injunction. Okay. Now, we go back to the transparent waiver solution. So it goes back to the trial court. Evidence is put on contrary to your representation today, and I'm not saying, do you recall that they put in a perfectly compliant report that the judge did in an injunction? And if so, what do you want them to do? Do what they've already done? The order said to put in a complying dollar form based on what the evidence will be. That's right. So my point is, if we end up, and I know you don't want to stand up there, if we end up concluding that we need to remand this case for some reason to the trial court anyway, and I think you'd like that because you've never filed a fee application, perhaps you'd like a chance to do it, shouldn't we say to the trial judge, when we send it back, if they haven't complied, enter the injunction. If they have, then you don't need to. Well, I think that it would be sent back to the trial judge with the instruction. So enter an injunction even though it's already been done. It hasn't been done. That's the thing. Wow, we don't know that. I mean, you seem like a nice fellow, and you dress nice, and I probably should rely on your word, but we don't make a record of here. That's the problem. I think your argument is exactly the opposite. In the absence of a record of compliance, the judge should have made an injunction. I think that's a good argument, but if we have to send it back to him anyway, why don't we ask him to determine that himself? I think based upon the evidence, it's all you have to do for a minute to make the decision that the injunction should have been granted, and then they absolutely have to put in a compliant order. Can we switch to the state claims for a moment, because I don't think there's much doubt that as to the federal claim, which is only for the objective relief, your client was entitled to get a compliant order. As to the state claims, did the trial court ever make a finding as to when? This couldn't have been reasonably remedied. I'm not using the exact statutory language, but the statute says you must make compliant unless it's, it would be too costly or you couldn't do it reasonably. The judge claims that finding at the time of the judgment. Does the judge make a good finding at the time of any of your client's visits? Isn't that necessary for you to recover, to establish an ADA violation, and therefore to recover California statutory damages? No, I said we just revamped it for the judge potentially to issue findings. I don't know that, at least from what I'm saying, I don't know that whether the judge could have issued findings or not, based upon the record, but it seems fairly clear that there were not specific findings tied to the earlier claims or violations by your client, right? Correct. What we're left here is the violations of not having an accessible entrance, that being the basis. Right, and we know there was a violation at the time the judge entered his judgment because he said so, and the other side didn't disagree. But the record's kind of murky about whether they could have fixed it earlier and whether or not they had money to fix it earlier and things like that. Those are all probably not good excuses. I'm on your side in looking at them, but don't we have to ask the judge to make findings about them? I would think that the judge should have made findings as to when, because they had the financial opportunity. They had the financial wherewithal. It was clear at the onset of trial that the Ying Trust had $953,000 that they had paid from 1992 to 2012 with no mortgage. So the money was there. And I don't think the other side dispensed with that. At the time of trial, they could have easily fixed it. Indeed, they said we're going to. The question is, doesn't the judge have to find that they could have easily fixed it or readily fixed it at the point in time when your client visited? Well, I think the court should have done that, but the court didn't do that. And trial courts don't do what they're supposed to. Don't we ask them to go back and do what they're supposed to? We do. I didn't know that. Well, that's why you're here. That's why police officers are here. Can you address one of the troublesome things about these kinds of cases to me? Your client knows and establishes that there's a violation, or at least that he can't get access, or that there's a violation that turns on other factors. Is that where you're going? Yeah. The reasonable expectation of the barrier should have been removed. No, I think I'm going in a slightly different direction. Your client then goes back to a Popeye's that's not really convenient to him, far from where he lives. Not at least not next door 13 more times or 12 more times. I think largely what I can give from this record, so there were 13 statutory violations rather than one, do you really get all those damages when it happens? Well, I think this is where the reasonable expectation of removing barriers comes into play. And a lot was said, but he knew that there were still barriers. There's nothing in the record, there's nothing in trial, that Mr. Yates knew each time that he went that they had removed architecture. How long between the first and second visit? Pardon me? How long between the first and second visit? When I looked at it, and I may be wrong, maybe I'm looking at the wrong thing, but it looked to me when you put the timing of a number of the visits together, no one could believe that between exit visit Y, somebody had actually taken that and put it in a new door. That's sort of correct. From the timing of his first visit to the terminal's last visit. That one's 29 minutes. That one's 2 minutes. It should have been fixed within the 29 minutes, but they're going to be seeking damages for each visit. My question is, do you get this back? I would say it's quite a stiff limitation. For seven? For seven. All right. So if you look at those seven, and then if we said what's the reasonable expectation for removal of the barriers, you have two things. First, there's a continuing duty to identify and remove. That's like if you can't do it today, maybe do it tomorrow. If we were to look for some guidance as to what would be reasonable, I think you'd look to so-called 55.56F, where that goes to statutory damages, where if in 30 days you remove barriers, the minimum statutory damage of 4,000 are reduced. If you do it within 70 days, minimum statutory damages are again reduced. So if we also look at government code 44.50 at SAC, governmental entity is told on architectural barrier, they have 90 days to take action. I'm sorry, did your client tell the compromise about the barrier? Any period of time, the 29 minutes? Well, he didn't do a notice, but at the time of service of the summons and complaint, let's call that notice. Right. Let's say that's three months thereafter. Then it's 37 more months. But there's no visits after the service of the summons and complaint. Oh, yes, there are. There are. So he had an amendment complaint, and he stopped going to the compromise 29 months after service of the summons and complaint. How many visits are there for which you're seeking damages after the service? Well, we're at seven right now. Are they all after the service of the summons and complaint? That was the question. That was Judge Irwin's question. How many of the visits of the seven were after, and how many were before? I don't have that written down there, but I expect an answer in that. If notice, because all these things in your signing are ones that deal with notice, the complaint you're covering, if you give notice, some of these 30 days, 60 days, 90 days, if notice is in three brackets, was there any notice? Whether or not notice was broken, I was just wondering, was there any notice given before the summons and complaint? No. You're incorrect in terms of the notice of the 30 and 60 days. That civil code section says that you're served with the summons and complaint as a defendant. Right. At the time of service, you've got 30 days to reduce statutory damages and another 60 days to reduce them. By removal of the architectural barriers, this never took place. Those are defenses under California Laws of the Claim. Correct. Well, it's to reduce statutory damages because we also have the issue that's been raised as to whether there's mitigation of statutory damages. And I don't believe there's any mitigation of statutory damages. The only mitigation that could take place is if there was fighting on actual damages, not statutory damages. And as we put in our brief, in terms of the mitigation section, which is civil code 55.56H, that was not in effect at the time of the end of Craig Keese's visits. Counselor, you're down to two minutes, and I know you want to save some of your final time. Did you still wish to? Save my final time? Yes. You have a little under two minutes. You're welcome to use it now, but. I'd rather use it. I'd rather use it. I'd rather use it. You may do that. Thank you. May it please the Court. Tyler Pietko for the appellees and across the palace. State Patrol Enterprises Inc. Just to answer the question about visits, and this is in the findings of fact, there were two prior to the lawsuit. The lawsuit was filed on April 21, 2011. This is on page four of the findings of fact. And then 11 were post-lawsuit. And as soon as the court found five that were, the court found seven that were at issue. I think we did that by stipulation. Right. And then the court found that only the one pre-litigation was compensable, the $4,000 statutory damage. But let me kind of go back to the big picture here. There is no remand necessary. This was a trial by a jury. So what about the issue of injunction? It seems to me the law is fairly clear that an injunction should have issued, in this case, in the context of requiring that there be a removal and substitution of the doors. That didn't occur. Does this court request to establish that? Respectfully, Your Honor, no. I disagree. First of all, the court has very wide discretion in positioning injunctions. In this case, if you'll. I have discretion in the type of injunctions, in the fashions of the injunctions. Yeah. If there's a problem architecturally, and if it is readily, if the change is readily achievable to be compliant, I believe the case is the same way as my colleague, that in that circumstance, with that factual predicate, that an injunction is required of some sort to get to that readily achievable result. The court might have wide discretion to say, do it within 70 days or 40 days or 120 days, at least under federal law. But the court can't say, well, I find a problem. You seem like a good guy. I think you'll fix it. Therefore, I'm not going to agree to my judgment. Well, the answer is in the court's very detailed order, and specifically the findings at page 18. What the court found, Judge Buehler found, is that we had provided another method of service, and that was the doorbell and the ISA sign. So you could do that forever without remediating. Is that your view? Well, the court said that, Your Honor, the bell and the employees holding the door fix the issue. That means there's no need for an injunction. She goes on and says. You said that would be true as a legal matter only if the normal compliant power door option were not readily achievable. So that's why the readily achievable is problematic, it seems to me, for your position. Well, we do disagree that installing a power door for every mom-and-pop business is readily achievable. We're not talking about every mom-and-pop business. We're talking about exactly one in which a power door apparently has been installed. So I don't understand the requirement of every mom-and-pop business. Well, there are no findings that it was readily achievable. That's a problem, isn't it? But the court's two of action courts were the bell and the employees holding the door fix the issue. It would not be wrong as a matter of law. If, in fact, making this compliant were readily achievable, and indeed on this record it appears that it was because your client came in and said, I'm doing it. After he got a bunch of money from the franchise. Okay, but whatever. We'll do that. I don't care why. Maybe it wasn't readily achievable up until then. That's a separate issue. When the judge entered his order at the time of trial. Her order. When she entered her order. I'm sorry. I do this all the time, but I'm properly corrected for it. When the magistrate judge revealed her internal letter, she said, yeah, you can fix it now. And you are. God bless you. In the meantime, you can use the doorbell and the thing and go and check her. But it's surely readily achievable at the time of her order. But did you read it? The order says the bell and the holding the door fixes the issue. I can't see the bell. That would be wrong. That would be wrong as a matter of law. Because you didn't see the evidence. There was a videotape that Shelly Fisher Yates coming into the restaurant with no barriers whatsoever. He got a spicy chicken and cut a slice. Here's the problem. And now we're talking about matters of law. You can't have a noncompliant door and say don't worry about it. We have people come out and open it up for people all the time. The law is designed to allow people with disabilities to be able to get in and out on their own. So how do you account for curbside service then? So the issue is, the Ninth Circuit mostly fairly said, if the judge finds that it's readily achievable, you cannot substitute in alternative means. That's exactly right, what the Ninth Circuit said, and most people in these states did not. Yes, and this court applied that rule. The judge found that, first of all, there was no access barrier. The video was very powerful. Contemporaneous, no access barrier whatsoever. The judge identified there was no access barrier, did she? Well, she found that this bell and the employees were working on it. Okay, we're back in the same loop. We're not making any problems at all. She didn't say no violation at all to go away, Mr. Yates. No suit for you. She said, yeah, there's a problem, and you're fixing it. In the meantime, using the bell and the door, and I mentioned curbside service, I mean, this is the door and the employees helping is better than curbside service, which is better proved as an alternative. In some circumstances, it's very business-to-business specific. So we're back to the question. Let's assume for the sake of this discussion that findings with respect to readily achievable at the time of the visits in question was the right place to be looking, and not at the time that the decision was made, wouldn't we have to have the district judge or the magistrate judge make those findings? Absolutely not. She already made them. She found that this prediction masquerading as a civil rights lawsuit, she found that he didn't have reasonable explanation for going back to this store that's 20 miles from his home in Santa Rosa. No, no, that's a different question than the one I'm asking. With respect to the one initial visit when she did grant statutory damages, if her findings were that at that time, a power door was not readily achievable, then Mr. Yates would be entitled to no statutory damages. So why didn't she have to make a finding with respect to what was readily achievable at the time of the first visit? Because the door and the employee training, holding the door open, that was implemented after the first visit, which was pre-lawsuit. There was no demand, pre-lawsuit demand here. We got notice before we got the lawsuit. I think we're talking past each other. The question I thought you were going to ask was at that time of the first visit, which Judge Buehler found was a compensable visit, did she have to find that a power door was readily achievable? Yes, because if not, then there was no violation. Right. I agree with that, and that's part of our cross-opinion. There were no findings since the regulation. Okay, that's good. So she didn't make those findings, and she has to make those findings as a prerequisite for the award of statutory damages. For a violation. For a violation, which is in effect. That's correct. But doesn't the fact that at the end of the day, your client shows up in court and says, you know, I couldn't do this before now, but luckily somebody's made some money available to me and I can do it, doesn't that make you readily achievable at that point? Well, you're going back and forth. No, I'm not going forth. At the time of the visit, when there were dirt boards. No, I agree with you about the statute. I agree with you about the, see this, I agree with you, you're going back, I'm going forth. I agree with you with respect to the time of the visit, that the judge did not make a finding at the time of the visit for which she awarded damages if it wasn't readily achievable. I agree on that. Here's my question. At the time that the judge entered her final order, which came from which you're both appealing, isn't it clear from the record that it was readily achievable then, because your client said he was doing it? Well, I'll go back to Judge Greger's question. No, stay with mine. Stay with mine. It's a really simple question. At the time the judge entered her order, wasn't it clear that putting in the power door is readily achievable because your client said I'm doing it? That's not the question. That may not be the question. That's the question I asked. Isn't it readily achievable at that point in time, yes or no? The record is not clear on that point. That's why there's no findings. No, I know there's no findings, but I've read the record. And you're reliant on your support on the injunction, aren't you? Your client came into court and said I can do it now. Right. With this money from the franchise. Right. I'll drop the money down to June. I can do it. There's a difference between can we do it and whether we're legally required, and that's what readily achievable speaks to. You look at it's not just the financial resources that are available. It is can it be accomplished easily, that's a key word, without much difficulty. Well, apparently that's true because there's a door there now, and there's some dispute apparently whether it's good enough. Again, they may be able to do that, but are they legally required? Does the regulations talk about moving a magazine around to create a path of travel? Are we going to say every business, and I know it's case by case, but now when you get one of these drive-by lawsuits, you've got to put a power door in, or you're going to spend $100,000 on the restaurant. Unfortunately, the question is can we infer from your client's testimony that he was going to put the door in that, in fact, readily achievable at the time that the court issued his order. He did it. That's a yes or no question. Yeah. The problem is it's readily achievable. That's a legal term. We're asking you whether we can conclude as a legal matter. Right. Now let me finish because I really want to frame it so it's only yes or no answer. We're asking you whether we can conclude as a legal matter that putting in a power door was readily achievable at the time that this judgment was entered because your client said, I'm in the process of doing it, Your Honor. Yes. Yes. That is a record. But, again, the question is at the time of the visits was it readily achievable? I understand. We don't have a record on that. Okay. And the evidence that was admitted in a trial as opposed to speculation about, you know, what I just heard now is not compliant. This is the first I've heard of that. Our client did it, but the order and the findings found that it was not necessary because the fix had already been made, and it was almost like dictum in the court's order because she goes on to say, It is also the case that Mr. Chin has testified he's been included in a power door. He has his free emerging money from the franchise, but she must have regarded it as more than dictum because she wanted $4,000 for his statutory damages, which she couldn't have done without a violation. Right. Well, again, the door and the bell on the door, that was installed after the first visit. So she found a stroke there from her order because she says the request for injunctive relief is moot. Before she even talks about whether it's readily achievable to add a power door at a cost we don't know if it's $6,000 or $3,000, but her order says injunctive relief is moot because the curbside service, the bell, and the employee's training gives you a video. It gives you a way to move on from injunctive relief and go to the issue of statutory damages, which is a question of why should we remand this permit to the district court to issue findings one way or the other with respect to whether it's readily achievable at the time of the alleged violations because it seems that while we may be able to infer the respect to your client's testimony at the time of the order, there certainly doesn't appear to be any specific findings with respect to the earlier violation in the fact council, which I appreciate. If it weren't in the fact council, I wouldn't be sending it back to the court to issue those findings one way or another because it's not kept in the record that we have. If we could find as one way or the other as a reviewing court what those findings would be, I think it's appropriate to remand. I'll slide to zero. If we remand, can the other side then make its attorney's case by which of their opinion they'd like it to do? I think it's untimely. If I were in your position, I'd be happy with an injunction of $4,000 because I suspect your opponent is not going to discover lots of things that he didn't claim before, but I just can't support it. Well, the judge's order was very clear. The plaintiff's timetable said we're supposed to plead and confer, go to mediation. There's a chance that we wouldn't be here if that procedure was followed, and it wasn't. It's clearly untimely, and he shouldn't get it in the second mind. Yeah, well, but I understand that there's a remand. That may be up to the district court. Thank you. Thank you. Mr. Krakovich, you have about a minute and a half remaining. You have one minute and 39 seconds remaining for rebuttal. The appellate had, pursuant to the court's order, asked what dates, what occasions, and he should be awarded damages. That was in a brief, and those were 3-8-11, 6-49-11, 1-8-12, 3-11-12, 5-14-12, but one deterrence occasion. In terms of whether it was really achievable at the time of the wherewithal, the testimony had been made at the beginning of trial that the Nying trust defendant was receiving approximately $3,600 per month, clear because there was no mortgage on the property. So up to the time of trial, it was about $953,000 that they had As a landlord, as a landlord tender, it's certainly liable to put forward the removal of architectural barriers. And as they said earlier, if the court were to look at IRS, the court to look at IRS code 44, that's a $10,000 tax credit, dollar for dollar.  Whether it be what plaintiff said, $31,000, or what defendant said, $5,600, it's really moot just because of that code in and of itself. One more question is, if the IRS Accomplishment Group were to apply the concept of mitigation to statutory damages, should we not consider it? They have not. So one way or the other. In other words, have they ever confronted a case in which it's been issued? Pardon me. Have they decided on the issue of mitigation one way or the other? I understand your statutory position, but there's no California law. That's correct. I can only say that it doesn't make sense that you have mitigation if you have minimum statutory damages, which are appealed in nature. So, in other words, if a jury made a determination that on a particular occasion  the plaintiff only had a sum of $2,000, it's mandatory that that court raise it up to $4,000. 55-56 gives the landlord or the tenant the ability to reduce statutory damages by acting within 30 days of the sum of the complaint, or 60 days reducing it to $1,000 or $2,000. But that doesn't speak to stacking. That doesn't say that a person can come back 11 times per day for a week and then have 55 or 77 statutory damages, correct? That's correct. It doesn't say one way or the other. That's correct, but that issue is not before the court because that code section was not in effect at the time of this instance. And I'm not saying that any plaintiff should, if they come back repeatedly the next day, the next day, the next day. But I think what you do have to do is you have to look at the removal of the barriers. Are they taking any proactive procedures to remove barriers? In this case, it was 36 months before they put in one accessible table and lowered the service counter. Counsel, we have your argument. Thank you very much. The case just argued is submitted, and we thank both counsel for your time.
judges: Graber, Hurwitz, Boulware